Ernest Galvan, 196065
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: Egalvan@rbg-law.com

Counsel for Petitioner Leslie D. Mower

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE D. MOWER, Reg. No. 10178-081<br>Federal Correctional Institution - Camp Parks,<br>Dublin, California,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>PAUL COPENHAVER, Warden, Federal<br>Correctional Institution - Camp Parks, Dublin,<br>California,<br><br>　　　　　Respondent. | Case No. C 07-3891 PJH<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 BY PRISONER IN FEDERAL CUSTODY** |

Leslie D. Mower, an inmate serving a sentence at the Federal Prison Camp attached to the Federal Correctional Institution at Dublin, California ("FCI Dublin"), petitions this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus. Petitioner challenges the announced practice and regulations of the Federal Bureau of Prisons ("BOP"), as implemented and overseen by the Respondent Warden, refusing to consider an inmate for placement in community confinement except for the last ten percent (10%) of an inmate's time served or six months, whichever is less. The Warden's action is based solely on strict adherence to unlawful BOP rules and regulations informally promulgated in December 2002 and adopted as regulations in February 2005. Absent the regulations, Petitioner is eligible under the statute for placement at a Community Corrections Center ("CCC") at any time during her sentence. In support of her claims, the Petitioner, through counsel, states:

## PARTIES

Petitioner is a woman whose conviction for tax evasion is currently on appeal to the Tenth Circuit Court of Appeals. She was sentenced to a twenty-seven month term of imprisonment. Petitioner is physically incapable of heavy work because of age-related infirmities discussed below. Although she arrived with her medical records, Petitioner was not seen by a physician for over a month after her arrival and was compelled to do hard work during that time.

Pursuant to a judgment of the United States District Court for the District of Utah (Judge Dale A. Kimball), the Petitioner is presently committed to the custody of the BOP. Her BOP Register Number is 10178-081. She is confined at FCI Dublin, within the jurisdiction of this Court. Petitioner's counsel is informed and believes that her projected release date from federal custody, which takes into account the anticipated award of good conduct time, is on or about February 5, 2009. Petitioner is a 60 year old, non-violent, first time offender and the mother of five (5) children, grandmother and great-grandmother. Her home is in Springville, Utah. Prior to being committed to the custody of the BOP, Petitioner experienced health problems. She particularly has a history of degenerative back disease, damaged knees, blood pressure problems,

1  and thyroid problems.  After sentence was imposed and after the pre-sentence report was
2  prepared, but before reporting to FCI Dublin, Petitioner's back problems worsened.  She received
3  two surgical epidural injection procedures to reduce her back pain.  She reported to FCI Dublin a
4  few days following the last procedure, however, the epidural has now worn off and she is
5  experiencing significant return of back pain.  After sentencing and after Petitioner was
6  designated to FCI Dublin, Judge Dale Kimball, the sentencing Judge, stated in his final order he
7  "would not oppose Defendant Leslie D. Mower's placement in a community correctional center.
8  Her current health problems and the fact that such a placement would afford her increased access
9  to her treating physicians certainly weigh in favor of such a placement.  She also poses no threat
10 to the community." (Declaration of Shirley Huey, Exhibit G at page 2 [Order, *United States v.*
11 *Thomas E. Mower, Leslie D. Mower, James Thompson*, Case No. 02-CR-787 DAK (D. Utah
12 Feb. 28, 2007)].)   The Court stated "Defendant can present these statements by the court to the
13 BOP for consideration in its determination." (*Id.* at 2-3.)  However, under the current
14 regulations, which have been found unlawful by every Circuit Court of Appeal to consider them
15 to date, the BOP will not consider Petitioner for placement in a CCC except for the last ten
16 percent (10%) of her time to be served, or six months, whichever is less.
17      Respondent Warden Paul Copenhaver exercises the delegated authority, vested by law in
18 the BOP, to "provide for the safekeeping, care and subsistence" of Petitioner.  18 U.S.C. §
19 4042(a)(2).  Respondent is further charged with the authority to approve any transfer of
20 Petitioner from FCI Dublin to another "appropriate and suitable" place of confinement, choosing
21 any "available penal or correctional facility that meets minimum standards of health and
22 habitability established by the Bureau, whether maintained by the Federal Government or
23 otherwise …." 18 U.S.C. 3621(b).  This includes a transfer of Petitioner to a CCC for any part of
24 her sentence.  Respondent is a party to this action in his official capacity both as the person
25 responsible for the challenged practice and as Petitioner's immediate custodian.

## JURISDICTION

27      This Court has jurisdiction to issue a writ of habeas corpus and to grant relief as law and

justice require. Petitioner is confined in the territorial jurisdiction of this Court, where she is held under color of authority of the United States. 28 U.S.C. §§ 1331, 2241(a), 2241(c)(1), (3) and 2243. Additionally, this court has jurisdiction to issue relief in the form of a writ of mandamus. This Court can compel Respondent in his official capacity to perform a duty owed to Petitioner, that is, with reference to the statutory factors, consider Petitioner for placement in a CCC. 28 U.S.C. § 1361.

## INTRADISTRICT ASSIGMENT

Petitioner is in custody at FCI Dublin, located in Alameda County, California, making this case suitable for assignment to the San Francisco or Oakland Division under Local Rule 3-2(d).

## PROCEDURAL BACKGROUND

Petitioner was convicted of tax evasion (26 U.S.C. § 7201) and conspiracy (18 U.S.C. § 371) after a joint trial with her ex-husband and co-defendant, Thomas E. Mower. Before the prosecution against her and her ex-husband, Ms. Mower tendered full payment of the tax obligations of which she was aware, but was prosecuted with her ex-husband nevertheless. Petitioner was sentenced on September 13, 2006. Judge Dale A. Kimball of the United States District Court for the District of Utah, Central Division imposed sentence of 27 months imprisonment, to be followed by three years of supervised release. The Court also ordered the Petitioner to pay a fine of $60,000, along with one-half the costs of the prosecution of the matter. Petitioner has paid the fines and the costs of prosecution. She has also paid any and all amounts of tax owing. As directed, Petitioner self-surrendered to FCI Dublin on March 1, 2007 and commenced service of her 27-month sentence. Her conviction is currently on appeal before the Tenth Circuit Court of Appeals. (The United States on or about July 20, 2007 moved to dismiss its cross-appeal, informing the Court of Appeals that the Solicitor General had declined to authorize the appeal. *United States v. Mower,* No. 06-4250 (10th Cir.).)

# ARGUMENT

The BOP has adopted an across-the-board policy of refusing to consider placement of non-violent individuals such as Ms. Mower in a CCC early in their sentence. The governing statute on designating a place of imprisonment, 18 U.S.C. § 3621(b), requires the BOP to exercise its discretion on an individual basis, considering factors that include the nature and circumstance of the offense and the history and characteristics of the prisoner. Contrary to the statute, the BOP has issued a regulation, 28 CFR § 570.21, purporting to exercise this discretion across-the-board to deny CCC placement to all inmates except for the final 10% or six months of the sentence, whichever is less, without any regard for individual factors. All of the Circuit Court of Appeals to consider the issue have determined that this regulation is unlawful. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007). The BOP, however, has defied the courts of appeal, and continues to apply the regulation against all individuals.

Moreover, here in the Ninth Circuit, which has not yet addressed the regulation, the BOP has adopted a pattern and practice of responding to habeas petitions like this one by waiting until the petition is granted, then purporting to apply individualized discretion, and asking the court to dismiss the matter as moot. A close examination of these cases reveals, however, that the BOP only pretends to exercise discretion, but always ends up with substantially the same result it would have reached under its invalid regulation: CCC placement only for the shorter of the final six months or 10% of the sentence. (Huey Declaration, ¶¶ 2-9.) To avoid a repetition of such sham compliance here, the Petitioner requests that the Court order the BOP to come forward with the specific factual and legal basis for its application of the statutory factors, and specific reasons for its decision regarding Petitioner's placement.

## I. THE BOP IS DELIBERATELY VIOLATING 18 U.S.C. § 3621(b), THE FEDERAL STATUTE ON DESIGNATING THE PLACE OF IMPRISONMENT.

Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate a federal prisoner's place of imprisonment once sentence has been imposed. 18 U.S.C. § 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>     (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. the Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

Regarding release of prisoners, Congress enacted 18 U.S.C.§ 3624(c) which states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable

opportunity to adjust to and prepare for the prisoner's re-entry into the community.

On December 20, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a formal memorandum opinion concluding that confinement in a CCC was unlawful because it did not constitute imprisonment within the meaning of 18 U.S.C. § 3621(b). The OLC memorandum concluded that 18 U.S.C. § 3624(c), which gives the BOP authority to send prisoners to CCC's at the end of a sentence, set an upper limit on the amount of time a prisoner can serve in a CCC at ten percent (10%) of the sentence, but never more than six (6) months. BOP therefore began a policy of limiting designation to a CCC within these limits. On the same day, the Department of Justice issued a one-page "Memorandum For Federal Judges," stating that the BOP was ending its "practice of honoring some judicial recommendations to place inmates in CCCs for the imprisonment portions of their sentences." (Huey Declaration, Exhibit I.) The 2002 policy was challenged in court, and invalidated by three circuit courts of appeal. *See Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004); *United States v. Arthur,* 367 F.3d 119, 121 (2d. Cir. 2004); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004). The 2002 policy change likely would have been invalidated by more circuits, but for the BOP's strategy of not appealing its losses, and settling any non-moot appeals. *See, e.g., Ashkenazi v. Attorney General*, 346 F.3d 191 (D.C. Cir. 2003); *Bugarin-Juarez v. Weiss*, 76 Fed. Appx. 773, 2003 WL 21949137 (9th Cir. Aug. 13, 2003) (mem.).

In 2005, the BOP responded to invalidation of its CCC policy by promulgating regulations which purported to exercise its placement discretion across-the-board regarding the placement of inmates in CCC. Section 570.21 of Title 28 of the Code of Federal Regulations states BOP "will designate inmates to community confinement only … during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). Section 570.20 established the purpose of the regulation as a "categorical exercise of discretion" regarding CCC placement, in lieu of the individualized discretion required by 18 U.S.C. § 3621(b).

The BOP currently applies this new regulation across the board, and refuses to consider an

6

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 BY PRISONER IN FEDERAL CUSTODY - Case No. C 07-3891 PJH

inmate for placement in a CCC for more than the last ten percent (10%) of the sentence, never to exceed six (6) months. Applying this rule is a violation of 18 U.S.C. § 3621(b) which gives the BOP authority to transfer an inmate and requires the BOP to consider the five factors listed in any such transfer decision and in making an initial designation. A "categorical exercise of discretion" cannot consider these five factors, because these factors must be applied separately based on the characteristics of each individual prisoner.

Numerous trial courts have determined that the BOP's policy, and later its regulations, to be unlawful and have ordered wardens to consider inmates for community confinement without reference to the policy or the regulations. Every appeals court that has heard the issued has invalidated the BOP regulations. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007). These courts have invalidated the regulation because it directly contradicts the governing statute, and thus cannot withstand analysis under the deferential standard of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

**II. THE BOP HAS MIS-APPLIED THE PRE-RELEASE STATUTE, 18 U.S.C. § 3624, AS SETTING A MAXIMUM CCC TERM IN THE FACE OF CLEAR AUTHORITY THAT THE STATUTE ONLY SETS A MINIMUM CCC TERM.**

The BOP mischaracterizes 18 U.S.C. § 3624(c) as a limit on its ability to designate an inmate to a CCC for more than the last ten percent (10%) of a sentence, not to exceed six (6) months. The BOP's misreading inverts the plain meaning and actual purpose of Section 3624, which is to set a *minimum* portion of the sentence to be served in a CCC, not, as the BOP would have it, a *maximum* portion. Section 3624(c) imposes an affirmative duty on BOP to place an inmate in a CCC or other form of community confinement as the inmate's release date nears. It has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration. *See Wedelstedt v. Wiley*, 477 F.3d 1160, 1166 (10th Cir. 2007).

The BOP's refusal to consider Petitioner for transfer to a CCC before the last ten percent (10%) of her time to be served is contrary to the laws of the United States. It is based exclusively on an unlawful regulation promulgated by the BOP which is contrary to congressional intent. In exercising his power to approve any transfer of petitioner, Respondent is authorized to choose any "available penal or correctional facility that meets minimum standards of health and habitability." 18 U.S.C. § 3621(b). In making a determination regarding a transfer, Respondent is required to apply the five factors to Petitioner on an individual basis as listed in the statute. In making such a determination, the Respondent must consider all available penal or correctional facilities, including a CCC.[1]

### III. EXTRAORDINARY RELIEF IS NEEDED DUE TO THE BOP'S PATTERN OF RESPONDING TO DISTRICT COURT ORDERS BY IMPOSING THE SAME CCC TERM IT WOULD HAVE IMPOSED UNDER THE INVALID 10%/6-MONTH REGULATION.

In cases at the district court level in the Ninth Circuit, the BOP has established a pattern of sham compliance with orders that require placement reconsideration without reference to the unlawful Section 570.21 regulation. Petitioner's counsel has reviewed a sample of cases that resulted in court orders documented on Westlaw from California, Washington, Oregon and Montana. (Huey Declaration, Exhibit A.) In the cases in which the writs were granted, and the

---

[1] BOP has promulgated a three step administrative remedies program. In this context, however, exhaustion is a judicially-created requirement, and is not jurisdictional for a habeas petition under 28 U.S.C. § 2241. *Rivera v. Ashcroft*, 394 F.3d 1129, 1139 (9th Cir. 2005). Here, use of the administrative remedies program would be futile because the BOP regulation as a whole is being challenged and not just its application to Petitioner. Pursuant to the administrative remedies program, the highest appeal authority available to Petitioner is to the BOP's General Counsel. It is that office that issued the fixed rule at issue. Because using the administrative remedies program would be futile, the exhaustion requirement does not apply in this matter. *Laing v. Ashcroft*, 370 F.3d. 994, 1000-01 (9th Cir. 2004). In the instances in which Circuit Courts of Appeal have considered the BOP regulation, where the exhaustion issue is addressed at all, the courts have not required petitioners to exhaust BOP remedies. *Woodall*, 432 F.3d at 239 n.2; *Wedelstedt v. Wiley*, 2006 WL 2475268 *3 (D. Colo. 2006), *aff'd Wedelstedt*, 477 F.3d 1160.

BOP was ordered to re-evaluate the petitioners' placement without regard to Section 570.21, the petitioners appear to have ended up no better off than they would have if they had not challenged the regulation. (Huey Declaration ¶¶ 4-9.) In these cases, the BOP filed statements of compliance asserting that they had re-evaluated the petitioner's placement, and had decided to place the petitioner in a CCC only for the last portion of the sentence, that is, the same CCC term the petitioner would have received under the unlawful regulation. (*Id.*)

In light of this pattern of sham compliance, Petitioner requests that the Court require that the BOP do more than merely file a piece of paper stating it re-evaluated the placement. At a minimum, Respondent should be required to articulate the factual basis for his decision, including the facts it considered under each of the five factors set forth in the governing statute, Section 3621(b), and what specific officials, including but not limited to the relevant Community Corrections Manager, participated in the review. Should the Court find that the BOP has failed to exercise its discretion, Petitioner requests that the Court order Petitioner transferred to the CCC in Salt Lake City.

## IV. MS. MOWER IS PARTICULARLY INJURED BY THE BOP'S UNLAWFUL CCC REGULATION BECAUSE SHE IS WELL-SUITED FOR PLACEMENT UNDER THE STATUTORY CRITERIA.

As a non-violent offender with no criminal history, Ms. Mower is particularly well-suited for placement in a CCC. Ms. Mower has substantial family ties to the Salt Lake City area, making placement in the BOP's Community Corrections Center in Salt Lake City particularly appropriate. Ms. Mower has significant medical problems, which could be better managed in a less restrictive facility, closer to family support.

### A. Under sub-section 3621(b)(1) "resources of the facility contemplated," Petitioner's Counsel has contacted the Salt Lake City Community Corrections Center and Has Been Informed That There are Available Beds.

A representative of Ms. Mower has spoken by telephone with the director of the Salt Lake City facility, and has been informed that beds are available in the facility and that the facility

would accept Ms. Mower if she were placed by the BOP, and that the facility offers appropriate and suitable programming.

### B. Under sub-section 3621(b)(2) "the nature and circumstances of the offense," Ms. Mower's offense is non-violent, and does not indicate any risk of flight.

Ms. Mower was convicted of tax evasion (26 U.S.C. § 7201) and conspiracy (18 U.S.C. § 371), after a trial concerning business transactions involving her ex-husband and co-defendant, Thomas E. Mower. The criminal tax loss at issue in Ms. Mower's conviction was approximately $89,000, based on the sentencing court's calculation. She tendered full payment of her tax obligations of which she was aware, before the prosecution of the case against her and her ex-husband. She promptly paid the fine and her share of the court costs assessed in the judgment against her, and was permitted to self-surrender, which she did on time, on March 1, 2007.

### C. Under sub-section 3621(b)(3) "the history and characteristics of the prisoner," Ms. Mower is a first-time offender, with a long history of service to her community.

Ms. Mower is a 60-year old great-grandmother who finds herself in federal prison due to business transactions involving her ex-husband. Her life up to this point has been an example of hard-work and dedication to her family and community.

Ms. Mower has worked her entire life, beginning as a child in her family's produce business. She left high school in the 11th grade to raise her first child. She raised five sons, helped raise her stepchildren, and is now a grandmother of 18 and a great-grandmother of 3.

Ms. Mower and her then-husband, Thomas E. Mower, started a business at their kitchen table that grew into a successful network marketing company. While working to ensure the success of the business, Ms. Mower also concentrated on giving back to the community through volunteer and charitable efforts. She has contributed time and money to the establishment of a program to promote international understanding between Asian countries and the United States at Utah State Valley College. She was also instrumental in supporting other programs at Utah

Valley State College and at Brigham Young University in academics, sports and the arts.

Ms. Mower has been a principal caregiver for her youngest child, J.J., who is mentally challenged, and lived with her until her incarceration. Although J.J. is chronologically an adult, he is not an adult mentally or emotionally, and requires close supervision. Ms. Mower organized her work and travel so that she could be with J.J. most of the time to provide the critical support that he needs.

Ms. Mower's significant health problems should also be weighed in favor of placement close to the supportive environment of her family in Utah. As noted above, Ms. Mower has a history of degenerative back disease, damaged knees, blood pressure problems, and thyroid problems. After sentencing, but before reporting to prison, Ms. Mower received two surgical epidural injection procedures to reduce her back pain. She reported to FCI Dublin a few days following the last procedure, however, the epidural has now worn off and she is experiencing significant return of near constant pain. These medical conditions could be better managed closer to the support of family, and closer to the physicians in Utah who have previously treated Ms. Mower.

Ms Mower has not received adequate medical attention at the FCI Dublin. She was not seen by a physician for over a month after her arrival. Even after her medical records arrived, and her condition was acknowledged with medical restrictions barring her from certain types of work, these medical restrictions have not been honored. She has also received inadequate pain management, with access substantially limited to Ibuprofen prescribed by the prison medical staff and over-the-counter pain relievers that she can buy from the institution commissary.

### D. Under sub-section 3621(b)(4) "any statement by the court that imposed the sentence," the sentencing Court's statements support placement in a CCC.

The sentencing judge issued an order on February 28, 2007, stating:

> Although the court will not affirmatively recommend placement in a community correctional center, the court would not oppose Defendant Leslie D. Mower's placement in a community correctional center. Her current health problems and the fact that such a placement would afford her increased access to her treating

11

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 BY PRISONER IN FEDERAL CUSTODY - Case No. C 07-3891 PJH

        physicians certainly weigh in favor of such a placement. She also poses no threat to the community.

(Huey Dec. Exhibit G at page 2.)  The BOP's across-the-board refusal to apply the Section 3621 criteria individually has deprived Ms. Mower of any consideration of this statement by the Court in determining her place of imprisonment.

## V. THE CCC REGULATION, 28 C.F.R § 570.21, WAS ADOPTED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT.

In addition to its substantive invalidity, the BOP's CCC regulation is also invalid under the Administrative Procedures Act ("APA") because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law."  5 U.S.C. § 706(2)(A).  *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.,* 462 U.S. 29 (1983).  The violations of the APA have been briefed in *Muniz v. Sabol*, Docket No. 06-2692-pr (1st Cir.), by *amici* Families Against Mandatory Minimums, the National Association of Criminal Defense Counsel, and the Criminal Justice Act Board for the United States District Court for the District of Massachusetts.  A copy of this amicus brief is attached to the concurrently filed Declaration of Shirley Huey as Exhibit J.

WHEREFORE, Petitioner prays that his Court:

    1.    Enter an order under rule 81(a)(2) of the Federal Rules of Civil Procedure directing Respondent to show cause before this Court within 20 days why a Writ of Habeas Corpus should not be issued invalidating Respondent's CCC transfer practices;

    2.    After full consideration on the merits, issue a writ of habeas corpus or an order in the nature of a mandamus,

        a.    declaring BOP's 6 month or ten percent rule unlawful as an impermissible restriction on Respondent's duties and to direct Respondent to not rely on the rule when selecting an appropriate place where Petitioner may serve her sentence and that Respondent must consider placement in a CCC,

    b. requiring that the BOP re-consider placement in a CCC and make a written report to the Court within 30 days articulating the factual basis for its decision under each of the 18 U.S.C. Section 3621(b) criteria, with specific responses from the officials who made the evaluation, including but not limited to the regional Community Corrections Manager, and stating either that Petitioner will be transferred immediately to the CCC or showing particular cause why Petitioner is not being so transferred.

  3. Order Petitioner transferred to the CCC in Salt Lake City if BOP fails to exercise its discretion as required by 18 U.S.C. § 3621(b).

  4. Grant such further relief as law and justice require.

Pursuant to 28 U.S.C. § 2242, I have been authorized to act on behalf of Petitioner by submitting this Petition, and I declare under penalty of perjury that the foregoing is true and correct. Executed on July 30, 2007 at San Francisco, California.

            By: */s/ Ernest Galvan*
               Ernest Galvan
               Attorney for Petitioner

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 BY PRISONER IN FEDERAL CUSTODY -