ROSEN, BIEN & GALVAN, LLP
Ernest Galvan, 196065
315 Montgomery Street, Tenth Floor
San Francisco, California 94104
Telephone: (415) 433-6830

Counsel for Petitioner Leslie D. Mower

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LESLIE D. MOWER, Reg. No. 10178-081
Federal Correctional Institution - Camp Parks,
Dublin, California,

Petitioner,

v.

PAUL COPENHAVER, Warden, Federal
Correctional Institution - Camp Parks, Dublin,
California,

Respondent.

Case No. 4:07-cv-03891-CW

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

Hearing Date: (Previously noticed Nov. 15, 2007 hearing vacated by Order of Oct. 25, 2007.)

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ........ 4

ARGUMENT ........ 4

I. Respondent Has Not Answered the Petition Within the Time Allowed. ........ 4

A. Respondent's Motion to Dismiss Is a Delaying Tactic That Fails to Address the Allegations Not Specifically Denied. ........ 4

B. The Unanswered Facts In the Petition Should Be Deemed Admitted. ........ 5

II. The Court Should Not Dismiss Ms. Mower's Habeas Petition As It Is Not Rendered Moot By Her Participation in the BOP's Drug Treatment Program or By a Provisional Recommendation of Release to a CCC on April 25, 2008. ........ 8

A. A Provisional Date, Set Under the Challenged 2005 Regulation, Does Not Moot the Petition. ........ 8

B. Ms. Mowers Has a Right to Be Considered for More Than the Six Months of CCC Time That the BOP Has "Provisionally" Set For Her. ........ 11

III. The Court Should Not Dismiss the Petition for Failure to Exhaust Administrative Remedies Because the PLRA Does Not Apply to Habeas Petitions and Because of the Futility of Requiring Exhaustion in this Instance. ........ 12

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases**

*Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257 n.14 (1978) ........ 5

*Byrd v. Moore*, 252 F. Supp. 2d 293 (W.D.N.C. 2003) ........ 10

*Cort v. Crabtree*, 113 F.3d 1081 (9th Cir. 1997) ........ 9

*Culter v. United States*, 241 F. Supp. 2d 19 (D.D.C. Jan. 27, 2003) ........ 10

*Davis v. Fechtel*, 150 F.3d 486 (5th Cir. 1998) ........ 12

*Ferguson v. Ashcroft*, 248 F. Supp. 2d 547 (M.D. La. 2003) ........ 10

*Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006) ........ 2, 11

*Harris v. Daniels*, 466 F. Supp. 2d 1239 (D. Or. 2006) ........ 9

*Harvey v. Eichenlaub*, 2007 WL 2782249 (E.D. Mich. Sept. 24, 2007) ........ 10

*Hicks v. Hood*, 203 F. Supp. 2d 379 (D. Or. 2002) ........ 10, 13

*Howard v. Ashcroft*, 248 F. Supp. 2d 518 (M.D. La. 2003) ........ 10

*Jones v. Bock*, 127 S. Ct. 910 (2007) ........ 12

*Jones v. Zenk*, 495 F. Supp. 2d 1289 (N.D. Ga. July 6, 2007) ........ 13

*Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004) ........ 13

*Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006) .......... 2, 9, 11

*Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) .......... 10

*Mujahid v. Daniels*, 413 F.3d 991 (9th Cir. 2005) .......... 9

*Murphy v. Hunt*, 455 U.S. 478 (1982) .......... 8

*Porter v. Nussle*, 534 U.S. 516 (2002) .......... 12

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) .......... 12

*Serrato v. Clark*, 486 F. 3d 560 (9th Cir. 2007) .......... 3, 10

*Tipton v. Federal Bureau of Prisons*, 262 F. Supp. 2d 633 (D. Md. 2003) .......... 10

*Ukawabutu v. Morton*, 997 F. Supp. 605 (D.N.J. 1998) .......... 5

*Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000) .......... 12

*Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007) .......... 2, 7, 11

*White v. Lewis*, 874 F.2d 599 (9th Cir. 1989) .......... 5

*Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005) .......... 2, 3, 11, 13

*Wyant v. Edwards*, 952 F. Supp. 348 (S.D.W. Va. 1997) .......... 4

**Statutes & Regulations**

18 U.S.C. § 3621 .......... 10

18 U.S.C. § 3621(b) .......... passim

18 U.S.C. § 3621(b)(1) ........ 7

18 U.S.C. § 3621(b)(2) ........ 7

18 U.S.C. § 3621(b)(3) ........ 7

18 U.S.C. § 3621(b)(4) ........ 7

18 U.S.C. § 3621(e) ........ 8

18 U.S.C. § 3624(c) ........ 6, 13

28 C.F.R. § 570.20 ........ 1, 4, 11

28 C.F.R. § 570.21 ........ passim

28 C.F.R. § 570.20(a) ........ 13

28 U.S.C. § 2241 ........ 4, 12, 13

28 U.S.C. § 2254 ........ 4

42 U.S.C. § 1197(e) ........ 12

42 U.S.C. § 1983 ........ 12

Administrative Procedure Act, 5 U.S.C. § 706 ........ 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........ 4

Federal Rule of Civil Procedure 8(d) ........ 5

Habeas Corpus Rule 11 ........ 5

Habeas Corpus Rule 5(b) ........ 4, 5

**INTRODUCTION**

Leslie D. Mower is a 60-year-old grandmother and great-grandmother, with no prior criminal history, who was sentenced to 27 months in the Bureau of Prisons ("BOP") for tax-related offenses arising from the operation of a legitimate business. She has made diligent efforts to serve her sentence in a productive and useful manner both for herself and for the community. These efforts started with following up on the sentencing court's statement regarding placement in the Community Corrections Center ("CCC") in Salt Lake City, where she could maintain her ties to the community she has served, and could continue medical treatment without burdening the BOP's medical system. (*See* Petition at 2:7-13; 11:23-12:5.) Her counsel promptly presented the request for CCC transfer to the BOP, which refused to consider it. At FCI Dublin, Ms. Mower's efforts to be productive and useful continued in other ways, for example, as she has assisted other women in their religious activities. Ms. Mower has also confronted her history of abuse of pain medications, and has sought and received admission to the BOP's Residential Drug Abuse Treatment Program ("RDAP"), as noted in the BOP's Motion to Dismiss (hereinafter "Motion").

Contrary to the BOP's motion, there is nothing contradictory between the goals of the RDAP and the relief sought in the habeas petition. One does not moot the other. While the BOP has provisionally set a new CCC transfer date earlier than what Ms. Mower could have expected when the habeas petition was filed, the BOP states that this date is only "provisional" and may change. Moreover, the new date was calculated under the same policy and regulation challenged here. This new date thus cannot moot Ms. Mower's right to have her case evaluated fairly under the Congressional mandated factors set forth in 18 U.S.C. § 3621(b). The 2005 regulation challenged here, 28 C.F.R. §§ 570.20 and 570.21 (hereinafter "2005 Regulation")[1], categorically

---

[1] 28 C.F.R. §§ 570.20 and 570.21 provide in full:

> **§ 570.20 What is the purpose of this subpart?**
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming

limits the amount of time an inmate may be placed in the CCC, and thus does not allow the BOP to consider the individual factors fully. Because the 2005 Regulation is so clearly contrary to the placement statute, it has been overturned by four circuit courts of appeals.[2]

The BOP, having been ordered on August 8, 2007 to answer the petition within 60 days, waited until almost the last possible day, and then did not file an answer. Instead, the BOP filed a motion to dismiss that does not address the factual or legal contentions of the Petition. The BOP has a pattern and practice of asserting mootness to avoid adverse rulings on its CCC regulation. (Petition at 8:11 – 9:14; Declaration of Shirley Huey in Support of Petition for Writ of Habeas Corpus, filed July 30, 2007, ¶ 3.)

The BOP should not be permitted to use delay to further deprive Ms. Mower of her right to individual consideration for CCC placement. Ms. Mower remains in prison at FCI Dublin. Each day of procedural delay by the BOP deepens the violation of Ms. Mower's right to

---

> which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **§ 570.21 When will the Bureau designate inmates to community confinement?**
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

[2] *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007).

individual consideration for transfer. The time for answer having passed, the Court should deem the allegations of the Petition admitted, and order the prayed for relief, including a declaration that the 2005 Regulation is unlawful, requiring the BOP to re-consider placement in CCC and make a written report to the Court within 30 days articulating the factual basis for its decision under each of the 18 U.S.C. Section 3621(b) criteria, with specific responses from the officials who made the evaluation, and reserving jurisdiction to order Petitioner transferred to the CCC in Salt Lake City if the BOP fails to establish to the Court's satisfaction that it exercised individualized discretion as required by 18 U.S.C. § 3621(b).

The BOP's motion and supporting declaration admit that Ms. Mower's new provisional April 28, 2008 transfer date was calculated under the 2005 Regulation. (Motion at 3:15-18; Declaration of Kim Beakey in Support of Motion to Dismiss ("Beakey Decl.") ¶¶ 2, 4-5.) This recalculation does not moot Ms. Mower's interest in being evaluated for a CCC placement of longer than six months permitted by the 2005 Regulation. Ms. Mower is firmly committed to completing the Residential Drug Abuse Treatment Program ("RDAP") that she has started at FCI Dublin. The BOP, however, has a track record of terminating programs and denying inmates benefits they have already earned in them, as occurred with the "boot camp" program. *See Serrato v. Clark*, 486 F. 3d 560 (9th Cir. 2007). Due to this uncertainty in the BOP's plans, Ms. Mower need not leave the drug treatment program in order to receive the benefit of an earlier CCC date. Ms. Mower would benefit from the determination of a definite transfer date based on the statutory factors, which would provide her with some assurance of timely transfer to the CCC in the event that the BOP fails to implement the current provisional date.

The BOP's novel request that the Court extend the Prison Litigation Reform Act exhaustion rules to habeas petitions regarding CCC placement should be rejected. Courts addressing the question of whether challenges to the 2005 Regulation must be exhausted have found that prison grievances would be futile where the BOP purports to exercise categorical discretion with no reference to individual factors that could be considered in the administrative remedy process. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005).

**STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))**

(1) Is Petitioner's statutory right to be evaluated for Community Corrections Center (CCC) placement under 18 U.S.C. § 3621(b), without regard to Respondents' "categorical" exercise of discretion in 28 C.F.R. §§ 570.20, 570.21, rendered moot by Respondents' calculation of a provisional release date under the same challenged regulation?

(2) The Respondents' time to answer the Petition having passed without an answer, should the Court issue the writ of habeas corpus?

(3) Should the Court adopt Respondent's request for imposition of a mandatory exhaustion requirement on habeas petitions under 28 U.S.C. § 2241 where none has existed before, and where use of administrative remedies would be futile in light of the challenged "categorical" exercise of discretion in 28 C.F.R. §§ 570.20, 570.21?

**ARGUMENT**

**I. Respondent Has Not Answered the Petition Within the Time Allowed.**

**A. Respondent's Motion to Dismiss Is a Delaying Tactic That Fails to Address the Allegations Not Specifically Denied.**

On August 8, 2007, this Court ordered: "Respondents shall file with the court and serve on petitioner, within 60 days of the date of this order, an answer showing cause why a writ of habeas corpus should not be issued." The deadline passed on October 8, 2007, and no answer has been filed. Respondents instead filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such motions are disfavored by the habeas corpus rules. Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("Hab. Cor. R.")[3] requires that "the answer must address the allegations in the petition." The Rule was adopted to address a lack of specificity in the habeas statute, 28 U.S.C. §§ 2241-43, under which "courts occasionally receive answers which contain only a statement certifying the cause of detention, *or a series of delaying motions such as motions to dismiss.*"

[3] The Rules Governing Section 2254 Cases apply to petitions filed pursuant to 28 U.S.C. § 2241, such as the instant Petition, as well as 28 U.S.C. § 2254. *See Wyant v. Edwards*, 952 F. Supp. 348 (S.D.W. Va. 1997).

Hab. Cor. R. 5, Advisory Committee notes, 1976 Adoption; *see also Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 269 n.14 (1978). Looking to the already-summary nature of habeas proceedings, and the urgent interests at stake, some courts have refused to entertain motions to dismiss in lieu of answers, except where leave to file a motion is sought and granted. *See Ukawabutu v. Morton*, 997 F. Supp. 605, 608-10 (D.N.J. 1998).

Where the Ninth Circuit has approved the use of motions to dismiss, it has done so where the order to show cause "did not specify a formal answer as opposed to another form of pleading." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989). Here, the Order to Show Cause specified an "answer." (Order to Show Cause (Aug. 8, 2007) at page 2, line 19.) Absent some special reason to permit a motion to dismiss, the practice of filing such motions in lieu of an answer "is wasteful of judicial resources and unnecessarily protracts the proceedings." *Ukawabutu*, 997 F. Supp. at 609. "To allow the Great Writ to languish in a procedural morass of Respondents' own creation mocks the constitutional guarantee of the Writ and the intent of Congress to preserve its availability." *Id.* at 610.

The protraction of the proceedings here particularly harms Ms. Mower. The right at issue is one of consideration for prompt transfer to the CCC. Each day the BOP succeeds in delaying a ruling on this Petition increases the number of days Ms. Mower is held in a federal prison camp hundreds of miles from her community, without the Congressionally mandated individual consideration of the case factors that make her appropriate for early transfer to the CCC.

**B. The Unanswered Facts In the Petition Should Be Deemed Admitted.**

"Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." Fed. R. Civ. P. 8 (d). *See also* Hab. Cor. R. 5(b) ("the answer must address the allegations in the petition"); Hab. Cor. R. 11 (Fed. R. Civ. P. apply to the extent they are not inconsistent.) As the Court noted in its Order to Show Cause, Ms. Mower raises several issues regarding the 2005 Regulation: (1) that the regulation violates 18 U.S.C. § 3621(b); (2) the regulations are unlawful as applied to her because her situation renders earlier placement in a CCC in Utah particularly appropriate; and (3) the regulation was adopted in violation of the Administrative Procedure Act, 5 U.S.C. § 706 et seq. *See* Order to Show

Cause (filed Aug. 8, 2007).  Furthermore, Ms. Mower's petition documents the BOP's pattern of sham compliance with orders that require placement reconsideration without reference to the 2005 Regulation.  The Court ordered the Respondent to answer the claims raised in Ms. Mower's petition within 60 days of its Order.  The time for filing a response to this Order has passed, and the Motion to Dismiss does not respond to these facts.  These facts should be deemed now admitted, and Ms. Mower's petition for habeas corpus should therefore be granted.

The BOP's time for answer having expired, the following facts should be found based on the verified Petition and the Declaration of Shirley Huey, filed July 30, 2007 ("Huey Declaration"):

1. Ms. Mower has a history of degenerative back disease for which she received two surgical epidural injections before incarceration, which have now worn off.  She is experiencing significant return of back pain. (Petition at 2:2-5.)
2. Ms. Mower's current health problems and the fact that CCC placement would increase her access to her treating physicians weigh in favor of such placement. (Petition at 2:8-9; *quoting* Feb. 28, 2007 Sentencing Order, Huey Declaration, Exh. G at 2.)
3. Ms. Mower poses no threat to the community.  (*Id.*)
4. The BOP has adopted an across-the-board policy of refusing to consider placement of non-violent individuals such as Ms. Mower in a CCC early in their sentences. (Petition at 4:2-3.)  This policy, embodied in federal regulations at 28 C.F.R. § 570.21, has been held unlawful by each of the four circuit courts of appeals to consider the issue. (Petition at 4:9-13.)
5. The BOP has adopted a pattern and practice of responding to habeas petitions like this one by waiting until the petition is granted, then purporting to apply individualized discretion, and asking the court to dismiss the matter as moot.  A close examination of these cases reveals, however, that the BOP only pretends to exercise discretion, but ends up with substantially the same result it would have reached under its invalid regulation: CCC placement only for the shorter of the final six months or 10% of the sentence. (Petition at 4, 8-9; Huey Declaration ¶¶ 2-9.)
6. The BOP misreads 18 U.S.C. § 3624(c) to set a maximum portion of the sentence (6

months or 10%) to be served in a CCC, when the statute actually sets a minimum portion of the sentence to be served at the CCC. (Petition at 7; *Wedelstedt v. Wiley*, 477 F.3d 1160, 1166 (10th Cir. 2007).)

7. The BOP is required by 18 U.S.C. § 3621(b) to apply the five factors set forth there to Petitioner individually in choosing the place of incarceration. (Petition at 8:4-9.)

8. Ms. Mower is particularly harmed by the BOP's failure to apply individualized discretion because she is particularly well-suited to early placement in the CCC. (Petition at 9:16-22.)

9. Under 18 U.S.C. § 3621(b)(1), "resources of the facility contemplated," the CCC in the Salt Lake City, Utah area has sufficient resources to house Ms. Mower. (Petition at 9:24-10:2.)

10. Under 18 U.S.C. § 3621(b)(2), "the nature and circumstances of the offense," Ms. Mower's offenses concerned business transactions involving her ex-husband in which the criminal tax loss was approximately $89,000. She promptly paid all tax obligations of which she was aware before prosecution, and promptly paid the fine and her share of court costs assessed in the judgment against her. (Petition at 10:4-12.)

11. Under 18 U.S.C. § 3621(b)(3), "the history and characteristics of the prisoner," Ms. Mower is a non-violent, first-time offender, a 60-year-old grandmother whose life up to this point has been an example of hard-work and dedication to her family and community.

12. Also under 18 U.S.C. § 3621(b)(3), Ms. Mower's health problems weigh in favor of placement closer to treating physicians and family support. She has experienced significant pain in prison, and has not received adequate medical care or pain management. (Petition at 11.)

13. Under 18 U.S.C. § 3621(b)(4), "any statement by the court that imposed the sentence," the sentencing Court stated it would "not oppose Defendant Leslie D. Mower's placement in a community correctional center. Her current health problems and the fact that such a placement would afford her increased access to her treating physicians certainly weigh in favor of such a placement. She also poses no threat to the community." (Petition at 11-12; Huey Declaration Exh. G at 2.)

14. The regulation purporting to exercise BOP's placement discretion categorically without regarding to individual factors was adopted in violation of the Administrative Procedures Act. (Petition at 12, Huey Declaration, Exhibit J.)

The time for answer having expired, these facts should be deemed admitted and Ms. Mower's Petition should be granted.

## II. The Court Should Not Dismiss Ms. Mower's Habeas Petition As It Is Not Rendered Moot By Her Participation in the BOP's Drug Treatment Program or By a Provisional Recommendation of Release to a CCC on April 25, 2008.

### A. A Provisional Date, Set Under the Challenged 2005 Regulation, Does Not Moot the Petition.

Ms. Mower has filed a habeas petition seeking consideration for immediate placement at a Community Corrections Center ("CCC"). Under 18 U.S.C. § 3621(b), the Respondent BOP possesses the authority to "at any time…direct the transfer of a prisoner from one penal or correctional facility to another." While it is true that Ms. Mower is participating in the BOP Residential Drug Abuse Treatment Program ("RDAP") and that her successful participation in the program thus far has resulted in provisional eligibility for an early CCC placement, this does not render Ms. Mower's petition moot. A case becomes moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982).

Ms. Mower seeks a remedy that is still available to her. Ms. Mower is still at FCI Dublin, and has not had her CCC placement date considered without reference to the 2005 Regulation challenged here. Respondent asserts that she has already been relieved of the 10% limit (under which she would receive only 2.7 months at the CCC), but Respondent concedes that she is still subject to the six-month limit. (Beakey Decl. ¶¶ 2, 4-5.) The April 28, 2008 CCC date currently set for Ms. Mower was calculated under the same regulation, 28 C.F.R. § 570.21.[4]

[4] The change in Ms. Mower's CCC date from one that would allow her to spend just 10% of her 27-month sentence in the CCC, to one that allows her to spend 6 months assigned to the CCC was made under a subsection (b) of 28 C.F.R. § 570.21 that creates an exception to the 10% rule for participants in the drug program authorized under 18 U.S.C. § 3621(e), the RDAP program that Ms. Mower is now completing. The regulation provides in full:

In addition, the BOP has only documented a "provisional" April 2008 CCC transfer date. (Beakey Decl. at page 3, line 23; Beakey Decl. Exh. 4, page 5.) The BOP's "provisional" promise is not certain enough to moot Ms. Mower's interest in her right under 18 U.S.C. § 3621(b) to an individualized determination of her placement without regarding to the six-month limit imposed by 28 C.F.R. § 570.21. *See Mujahid v. Daniels*, 413 F.3d 991, 994-95 (9th Cir. 2005) (no mootness despite intervening release of inmate into supervised release because the period of supervised release could be modified); *Levine v. Apker*, 455 F.3d 71, 76-77 (2d Cir. 2006) (where petitioner is already serving term of supervised release, petition is not moot where the term of supervised release could be modified).

Ms. Mower is committed to successfully completing the RDAP program. Nothing in her habeas petition or in this filing should be interpreted to say otherwise. The BOP, however, makes no firm commitment to honor the early release and early transfer to the CCC that Ms. Mower is earning by her hard work in the RDAP program. The BOP's provisional commitment to do its part is not certain enough to moot this case.

The BOP has a track record of denying prisoners benefits they have already earned in various ways, including by eliminating entire programs or classes of eligibility, and cancelling all benefits earned by those currently in the programs. (*See Cort v. Crabtree*, 113 F.3d 1081 (9th Cir. 1997) (BOP revoked prisoner's provisional early release date even though they had completed 500-hour program); *Harris v. Daniels*, 466 F. Supp. 2d 1239 (D. Or. 2006) (same);

---

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. § 570.21.

*Hicks v. Hood*, 203 F. Supp. 2d 379 (D. Or. 2002) (BOP revoked prisoner's provisional early transfer to CCC after prisoner had completed the RDAP program, based on BOP change in evaluation of prisoner's case); *Byrd v. Moore*, 252 F. Supp. 2d 293 (W.D.N.C. 2003) (upon adoption of the current unlawful policy against prisoners server entire term at CCC, BOP attempted to remove persons sent to the CCC at the beginning of their sentences under the pre-2002 correct interpretation of 18 U.S.C. § 3621, even where persons had succeeded in the CCC and were gainfully employed); *Tipton v. Federal Bureau of Prisons*, 262 F. Supp. 2d 633 (D. Md. 2003) (BOP attempted to remove prisoners from CCC who had been sent there at start of their sentences under unlawful December 16, 2002 OLC Memorandum, even though prisoners had maintained substantial work and family connections during CCC placement); *Howard v. Ashcroft*, 248 F. Supp. 2d 518 (M.D. La. 2003) (BOP attempted to remove petitioner from CCC where BOP had placed her under 1998 Program Statement on CCCs); *Ferguson v. Ashcroft*, 248 F. Supp. 2d 547 (M.D. La. 2003) (same); *Culter v. United States*, 241 F. Supp. 2d 19, 20-21 (D.D.C. 2003) (BOP attempted to move petitioner from CCC even where the petitioner was gainfully employed, maintained positive community contacts, and made "admirable strides" in rehabilitation and district court relied on BOP representations in the sentencing); *Serrato v. Clark*, 486 F. 3d 560 (9th Cir. 2007) (where petitioner's plea and the court's sentence were based upon petitioner's placement in ICC, or boot camp, program and BOP subsequently terminated the ICC program). The BOP's history of reversing placement decisions and terminating longstanding programs relied upon by judges and defendants strongly suggests that any current "provisional" CCC referral should not render this petition moot.

The cases relied upon by Respondent are inapposite. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996); *Harvey v. Eichenlaub*, 2007 WL 2782249 (E.D. Mich. Sept. 24, 2007). In *Mitchell* and in *Harvey*, circumstances had changed to make it absolutely certain that no relief could be ordered. The plaintiff in *Mitchell* was no longer housed at the jail whose library access policy he challenged. The plaintiff in the unpublished *Harvey* case had been released completely from BOP custody prior to the Court's decision.

**B. Ms. Mowers Has a Right to Be Considered for More Than the Six Months of CCC Time That the BOP Has "Provisionally" Set For Her.**

As Respondent acknowledges (*see* Motion at 4), the crux of Ms. Mower's Petition is that she should be fairly evaluated for transfer to the CCC without regard to a six-month limitation, not only the 10% limitation. Both of these limitations are the result of the unlawful 2002 change in policy and the later 2005 Regulation, resulting on the "categorical" exercise of discretion to deny all BOP inmates consideration for more than six months of CCC time. 28 C.F.R. §§ 570.20, 570.21. This regulation has been invalidated by four circuit courts of appeal as inconsistent with the Congressional intention of the BOP placement statute, 18 U.S.C. § 3621(b), which requires individualized placement decisions. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007).

As noted above, the change in CCC date on which Respondent bases its assertion of mootness was made under the terms of the 2005 Regulation challenged here. A change made under the challenged regulation cannot moot a challenge to that regulation.

Without application of the 2005 Regulation, Ms. Mower would be eligible for more than six months of CCC placement. Respondent's Motion to Dismiss offers only speculation and conjecture about what would result from an evaluation without regard to the 2005 Regulation. (Motion at 4-5.) Given the now uncontested fact that Ms. Mower is particularly suited to early placement in the CCC based on the Congressionally mandated factors set forth in 18 U.S.C. § 3621(b), there is no reason for the Court to accept speculation and conjecture about would a fair evaluation would produce. Moreover, in light of the BOP's now uncontested pattern of merely pro forma evaluations, ((Petition at 4, 8-9; Declaration of Shirley Huey ¶¶ 2-9), Petitioner has asked this Court to order that the BOP articulate its reasoning as to each factor, which should further prevent the type of foregone conclusion that Respondent predicts in its Motion to Dismiss.

Respondent incorrectly contends that because Ms. Mower cannot achieve a better result than she has already achieved through the RDAP program, her right to an evaluation without

regard to the 2005 Regulation is moot, and that she would have to abandon the RDAP program in order to benefit from a re-evaluation. (Motion at 4-5.) Ms. Mower has no intention of abandoning the RDAP program. Nor should she be threatened with removal as a form of retaliation for exercising her First Amendment right to challenge the 2005 Regulation by the instant Petition.[5] Her right to receive an evaluation without regard to the 2005 Regulation does not conflict with her commitment to the RDAP program. She fully intends to complete the RDAP program. She cannot know, however, whether the BOP intends to maintain the program and implement her provisional CCC date. She therefore retains a present interest in having a definite CCC date determined without reference to the 2005 Regulation challenged here.

**III. The Court Should Not Dismiss the Petition for Failure to Exhaust Administrative Remedies Because the PLRA Does Not Apply to Habeas Petitions and Because of the Futility of Requiring Exhaustion in this Instance.**

Respondent argues that the Court should dismiss the petition because Ms. Mower failed to exhaust administrative remedies as required under the Prisoner Litigation Reform Act ("PLRA"). 42 U.S.C. § 1197(e). (Motion at 5-6.) The BOP claims that Ms. Mower's Section 2241 petition is a lawsuit challenging prison conditions, and therefore subject to the PLRA's mandatory exhaustion requirement. The BOP's position is wrong.

The PLRA's exhaustion requirement does not apply to habeas petitions under 28 U.S.C. § 2241. *See Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000); *Davis v. Fechtel*, 150 F.3d 486 (5th Cir. 1998). Respondent cites no authority applying the PLRA exhaustion requirement to Section 2241 petitions. Respondent cites two cases that discuss the PLRA exhaustion requirement, *Porter v. Nussle*, 534 U.S. 516 (2002), and *Jones v. Bock*, 127 S. Ct. 910 (2007); however, these cases do not involve habeas petitions, but rather suits brought under 42 U.S.C. § 1983. The Supreme Court in *Porter* distinguishes between actions that challenge the fact of duration of confinement and those that challenge the conditions of confinement. 534 U.S. at 527 (discussing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). As discussed in *Porter*, civil rights actions that challenge the conditions of confinement fall under the PLRA. *Id*.

[5] Ms. Mower's counsel declines to read any such threat in Respondent's arguments.

A petition regarding CCC transfer concerns the execution of sentence, not the conditions of confinement. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005). Ms. Mower's petition therefore is not subject to statutory exhaustion under the PLRA. *See, e.g.*, *Hicks v. Hood*, 203 F. Supp. 2d 379, 382 (D. Or. 2002) ("the PLRA…[does not] expressly apply to habeas corpus petitions filed pursuant to 28 U.S.C. § 2241. Therefore, exhaustion of administrative remedies does not appear to be jurisdictional in this case.").

Section 2241, the statute under which Ms. Mower has filed her habeas petition, does not impose a statutory exhaustion requirement. *See Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). Where exhaustion is not statutorily required, it is a prudential requirement, which courts have the discretion to waive. *See Laing*, 370 F. 3d at 998; *see also Jones v. Zenk*, 495 F. Supp. 2d 1289, 1299 (N.D. Ga. 2007). A court may waive the exhaustion requirement for a Section 2241 petition where exhaustion would be futile.

Exhaustion of administrative remedies would be futile and should be excused if the agency has predetermined the issue before it. It would be futile for Ms. Mower to exhaust her administrative remedies. The BOP has admitted that the 2005 Regulation is a "categorical" exercise of its discretion. *See* 28 C.F.R. § 570.20(a); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) (agreeing with district court that exhaustion not required for action challenging 28 C.F.R. § 570.21 because petitioner "is not challenging the application of the BOP regulations, but their validity.") The BOP proclaims its authority to make such categorical exercises of discretion regarding halfway house placement before the 10% or six-month minimum period required under Section 18 U.S.C. 3624(c), with no consideration of individual factors. No individual appeal can have an effect on a categorical exercise of discretion. *See, e.g.*, *Jones*, 495 F. Supp. 2d at 1300 (finding petitioner's failure to exhaust waived for futility because the BOP "has predetermined by rulemaking the issue Petitioner challenges here. What is more, the BOP has continued to enforce this rule in the face of its invalidation by four federal courts of appeals and various district courts…"). The BOP's continuing application of these invalid regulations and policies suggests that any attempt to seek an administrative remedy would be futile. Therefore, this Court should not deem exhaustion of

administrative remedies a prerequisite to its jurisdiction.

In addition, on or about April 6, 2007, just over one month after Ms. Mower arrived at FCI Dublin, her counsel sent a formal request for transfer to the CCC, which the BOP ignored and refused to process as a request for Administrative Remedy. Declaration of William T. Jennings, Exhibits A and B. The April 6, 2007 letter informs the BOP of the legal challenge to the 2005 Regulation, and demands consideration for transfer without reference to the challenged regulation. The substantive purpose of exhaustion, to give the agency notice of the problem and a chance to respond to the issues presented in this Petition, was thus satisfied. The fact that Respondent was informed of the problem, the basis for the challenge, and the need for a remedy more than four months before this Petition was filed, militates strongly against any prudential imposition of the exhaustion requirement.

**CONCLUSION**

For the foregoing reasons, the Petitioner asks this Court to:

(1) Deny Respondent's Motion to Dismiss;

(2) Issue the Writ of Habeas Corpus or an order in the nature of a mandamus,

a. declaring BOP's 6 month or ten percent rule unlawful as an impermissible restriction on Respondent's duties and to direct Respondent to not rely on the rule when selecting an appropriate place where Petitioner may serve her sentence and that Respondent must consider placement in a CCC,

b. requiring that the BOP re-consider placement in a CCC and make a written report to the Court within 30 days articulating the factual basis for its decision under each of the 18 U.S.C. Section 3621(b) criteria, with specific responses from the officials who made the evaluation, including but not limited to the regional Community Corrections Manager;

/ / /

/ / /

/ / /

/ / /

/ / /

(3) Order Petitioner transferred to the CCC in Salt Lake City if BOP fails to exercise its discretion as required by 18 U.S.C. § 3621(b).

Dated: October 29, 2007

Respectfully submitted,
ROSEN, BIEN & GALVAN, LLP

By: /s/ *Ernest Galvan*____________________
Ernest Galvan
Attorneys for Petitioner